# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALVARO JAVIER SOSA ALTEZ,

        Petitioner,

    v.

SCOTT SMITH, DALE SCHMIDT,
SAMUEL OLSON, MARKWAYNE
MULLIN, and TODD BLANCHE,

        Respondents.

Case No. 26-CV-187-JPS

**ORDER**

## 1. INTRODUCTION

Petitioner Alvaro Javier Sosa Altez ("Petitioner") is in the legal custody of Immigration and Customs Enforcement ("ICE") and is incarcerated at Dodge Detention Facility in Wisconsin, where Respondents Scott Smith and Dale Schmidt serve as his physical custodian. ECF No. 1 at 3. Petitioner has named the Secretary of the Department of Homeland Security ("DHS"), the United States Attorney General, and the Director of the ICE Field Office in Chicago as Respondents as well; the Court will hereafter refer to these officials as the "Federal Respondents."[1] *Id.*

---

[1] The petition originally named Kristi Noem, DHS Secretary, and Pamela Bondi, United States Attorney General, among the respondents. Both have since left those roles, so the Court has updated the caption with the names of the individuals currently serving in these roles. *See* FED. R. CIV. P. 25(d).

According to the caption in the Petition, Respondent Samuel Olson (spelled "Olsen" in the Petition) is the Director of the ICE Field Office in Chicago. ECF No. 1 at 1. Although another page of the petition lists Scott D. Russell in this role, *id.* at 3, this appears incorrect, as is the spelling of Scott Olson's name. *See* Ethan Ilers & Emmy Victor, *ICE's Chicago Field Director Leaving Assignment Ahead of Scheduled Court Appearance*, WGN (Oct. 17, 2025), https://wgntv.com/news/operation-

On February 3, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his continued detention is unlawful on three bases (Counts One, Two, and Three). *Id.* at 1–2, 5–8. Federal Respondents move to dismiss the petition.[2] ECF Nos. 7, 8. Petitioner opposes dismissal. ECF No. 9. For the reasons stated below, the motion to dismiss will be granted in full, the petition will be denied without prejudice, and this case will be dismissed.

## 2. FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following recitation of facts from the petition and the attachments thereto, ECF Nos. 1 and 1-1, as well as documents that Federal Respondents submitted in advance of a hearing in this case, ECF Nos. 5, 5-1–5-5, and the parties' briefs, ECF Nos. 8 and 9, to the extent those facts are undisputed and consistent with the petition. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. . . . [Additionally, a] party [opposing a Rule 12(b)(6) motion] may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." (collecting authorities)). The Court provides additional legal context where necessary.

---

midway-blitz/ice-official-chicago-court-appearance-personnel-change/ (quoting DHS statement that "Samuel Olson . . . will now be acting as interim FOD [presumably, field office director] of Chicago").

The Court has made all these changes to the caption and will direct the Clerk of Court to effectuate all these changes on the docket.

[2]Petitioner's jail custodians, Scott Smith and Dale Schmidt, join the Federal Respondents' motion. ECF No. 8 at 1 n.1.

Petitioner is a citizen of Uruguay. ECF No. 1 at 2. He entered the United States in 2001 when he was 17 years old. *Id.* at 3; ECF No. 1-1 at 3; ECF No. 5-1 at 1. He was admitted to the United States under the Visa Waiver Program ("VWP").[3] ECF No. 5 at 2; ECF No. 5-1 at 1. The VWP

> allows foreign visitors to come to the United States for ninety days without first obtaining a visa. . . . To qualify, the visitor must have a passport from a participating country and waive the right to contest removal, except based on asylum. . . . At the time of entry, the visitor must "present a completed, signed Form I-94W, Nonimmigrant Visa Waiver Arrival/Departure Form."

*Ferreyra v. Barr*, 962 F.3d 331, 334 (7th Cir. 2020) (citing 8 U.S.C. § 1187 and 8 C.F.R. § 217.2(b)(1)).

Petitioner "has no recollection of executing a waiver of rights, nor of any explanation of the consequences of entry under the VWP." ECF No. 1 at 3. He was a minor and "was not represented by counsel, nor assisted by a parent or guardian, at the time of entry." *Id.* Petitioner says that Respondents have "expressly stated that [he] is detained pursuant to the VWP and [Immigration and Nationality Act or] INA § 217"[4] but have failed to provide adequate documentation to substantiate this. *Id.* at 2, 3–4. The

---

[3]Although Petitioner seems to challenge in the petition that he was admitted under the VWP, *see* ECF No. 1 at 3 ("Respondents claim that Petitioner entered the United States under the [VWP]"), he concedes in his opposition brief that he was. ECF No. 9 at 2 (citing ECF No. 5 at 2 and ECF No. 5-1). Accordingly, the Court treats this fact as undisputed.

[4]INA § 217 establishes the VWP and is codified at 8 U.S.C. § 1187, entitled "Visa waiver program for certain visitors." *Immigration and Nationality Act*, U.S. CITIZENSHIP & IMMIGR. SERVS., https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act [perma.cc/3TGS-2G2U] (last visited Apr. 27, 2026).

only VWP-related documentation available to Petitioner at the time he was detained was "a Spanish-language, incomplete I-94W form." *Id.* at 3.

In response to the petition, Federal Respondents submitted DHS records indicating that Petitioner entered the United States on February 23, 2001 as a "visitor for pleasure/tourism," with a "visa waiver" that expired on May 23, 2001. ECF No. 5-1.

Petitioner did not depart the United States after ninety days as required by the VWP, instead staying in the United States for more than two decades. ECF No. 9 at 2. He has three children who are United States citizens, the oldest of whom is, as of the date of this Order, is twenty-one. *Id.*

On December 30, 2025, Petitioner was in court at the Waukesha County Courthouse for a traffic violation. *Id.* at 3 (citing ECF No. 5-2 at 2); ECF No. 8 at 2 (citing ECF No. 5 at 2–3). ICE, having previously identified Petitioner as lacking legal authorization to stay in the United States, arrested Petitioner after this hearing and took him into custody. ECF No. 5 at 2 (citing ECF No. 5-2); ECF No. 8 at 2 (citing ECF No. 5 at 2–3); ECF No. 9 at 3 (citing ECF No. 5-2 at 2).

As the Court discusses further *infra* Section 3, Petitioner's opposition brief shifts focus to different facts than those alleged in the petition, primarily emphasizing procedural defects in Petitioner's arrest and detention rather than a lack of substantiation for his VWP waiver. ECF No. 9 at 3–4, 6–10 (citing ECF No. 5 and attachments). Facts relevant to Petitioner's procedural defect arguments include the following. These facts are drawn from the Federal Respondents' materials in opposition to the petition, ECF Nos. 4 and 5, and appear to be undisputed.

Still on December 30, 2025, at 10:15 a.m., ICE issued to Petitioner a "Notice of Intent to Issue a Final Administrative Removal Order," which ICE officer Michael Gavin ("Gavin") served on Petitioner. ECF No. 5-3. This document alleges that Petitioner is subject to removal because he is not a United States citizen, was admitted for a "temporary period not to exceed 90 days," and remained in the United States longer than this time without authorization. *Id.* at 1. Gavin certified that he explained the Notice of Intent to Issue a Final Administrative Removal Order to Petitioner in English "without the need of an interpreter." *Id.* at 2. This document explained to Petitioner that if he "wish[ed] to contest any of the above factual allegations or [his] removability," he had forty-eight hours from the time of service — i.e., until 10:15 a.m. on January 1, 2026 — in which to do so. *Id.* at 1. Petitioner refused to acknowledge receipt of the Notice of Intent to Issue a Final Administrative Removal Order, which another officer, "J. Johnson," witnessed. *Id.* at 2.

Still later the same day, another officer, "Nimtz, SDDO," signed a "Final Administrative Removal Order" applicable to Petitioner and citing the same reason for his removal. ECF No. 5-4. Petitioner highlights that Nimtz signed the Final Administrative Removal Order form before the forty-eight hour contestation period expired. ECF No. 9 at 3–4.[5]

On January 1, 2026, Gavin served the Final Administrative Removal Order on Petitioner; Petitioner refused to acknowledge receiving it. ECF No. 5-4.

---

[5]Additionally, that same day, Gavin served on Petitioner a "Notice to Alien Ordered Removed/Departure Verification" explaining the consequences of Petitioner's anticipated removal. ECF No. 5-5. Gavin certified that he explained the notice to Petitioner in English without need of an interpreter. *Id.*

At 10:15 a.m. that same day, Gavin also signed a later portion of the Notice of Intent to Issue a Final Administrative Removal Order (originally issued December 30, 2025), indicating that "[a]fter having provided [Petitioner] with a 48-hour period to respond . . . to the allegations" therein, Petitioner "[f]ailed or refused to respond to the allegations." ECF No. 5-3 at 2.

Petitioner remains in ICE custody and has not received a bond hearing or individualized custody determination. ECF No. 1 at 4. Federal Respondents argue that "ICE is required to detain [Petitioner] pending his removal" under 8 U.S.C. § 1231(a)(2). ECF No. 8 at 2.

Returning to the facts and claims in the petition itself, Petitioner asserts three grounds for habeas relief. ECF No. 1 at 5–8. In Count One, he argues that "Respondents have failed to produce any executed . . . [VWP] waiver" and/or that his VWP waiver was not knowing, voluntary, and intelligent. *Id.* at 5. Without proof that of a valid VWP waiver, he argues, Respondents have unlawfully detained Petitioner and denied him an individualized custody determination. *Id.* at 6.

In Count Two, Petitioner asserts that his detention is unlawful because "Respondents have produced no statutory citation that governs Petitioner's arrest and continued detention[,]" and "no record showing compliance with the detention framework they invoke." *Id.* at 6–7.

In Count Three, Petitioner preserves a claim that he is detained "without meaningful process and without a demonstrated likelihood of removal, rais[ing] serious constitutional concerns." *Id.* at 8.

In terms of relief, he asks the Court to order his "immediate release" or "a prompt individualized custody determination by a neutral decisionmaker" and to "[d]eclare Petitioner's continued detention unlawful

absent proof of a valid [VWP] waiver and lawful custody authority." *Id.* He further asks the Court to "direct[] Respondents to file a return producing the executed VWP waiver, the alleged § 217 administrative removal order, and the administrative record relied upon." *Id.*

Petitioner additionally requested, in the petition and via a motion for a temporary restraining order, that Respondents be enjoined from moving him during the pendency of this action. *Id.* at 8; ECF No. 2. The Court denied the temporary restraining order in a hearing on February 6, 2026. ECF No. 6. The Court further made initial findings that it did not have jurisdiction over this matter. *Id.* at 2. Federal Respondents' motion to dismiss followed. ECF No. 7.

## 3. LAW & ANALYSIS

Federal Respondents argue that Count One "in effect, challenges the order removing [Petitioner] from the United States" and accordingly is beyond the district court's purview and therefore subject to dismissal for lack of jurisdiction. ECF No. 8 at 4–5. They further argue that Counts Two and Three are subject to dismissal for failure to state a claim. ECF No. 8 at 4–6. The Court concludes that all three counts are subject to dismissal for lack of jurisdiction.

### 3.1 Count One

Federal Rule of Civil Procedure 12(b)(1) contemplates dismissal of matters that fall outside the district court's subject matter jurisdiction. When considering a motion to dismiss under Rule 12(b)(1), the Court accepts all allegations in the pleading as true and draws all reasonable inferences in the petitioner's favor. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)).

Federal Respondents argue that the petition, insofar as it seeks review of Petitioner's removal order due to an inadequate VWP waiver, is beyond the district court's jurisdiction. ECF No. 8 at 4–5. Petitioner responds that he "does not ask the Court to review, vacate, or stay any removal order," but instead "asks the Court to determine whether the government has demonstrated a lawful basis for [his] physical confinement." ECF No. 9 at 4 (internal citation omitted). Indeed, the petition includes such a disclaimer. ECF No. 1 at 2. Petitioner argues that this Court can properly decide his petition because he seeks relief for unlawful detention pending his removal, rather than review of the order of removal itself. ECF No. 9 at 5.

"[T]he courts of appeals have exclusive jurisdiction to review orders of removal" in immigration proceedings. *Ferreyra*, 962 F.3d at 333 n.2 (citing *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006)); *see also* 8 U.S.C. § 1252(a)(5). Seeking review of an immigration removal order is a distinct proceeding from a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See Ferreyra*, 962 F.3d at 333 n.2 (discussing a "duplicative" petition for habeas corpus filed with the district court during the "pendency" of [the immigration proceedings before the Seventh Circuit).

Meanwhile, a district court may entertain a § 2241 petition that "only challenges [the petitioner's] allegedly unlawful detention . . . and no other immigration decisions." *Neilova v. Noem*, 812 F. Supp. 3d 836, 838 (N.D. Ill. 2025) (citing *Valencia v. Noem*, No. 25 C 12829, 2025 WL 3042520, at *1–2 (N.D. Ill. Oct. 31, 2025); *H.G.V.U. v. Smith*, No. 25 CV 10931, 2025 WL 2962610, at *2–3 (N.D. Ill. Oct. 20, 2025); and *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *2–4 (N.D. Ill. Oct. 16, 2025)). The Court's review is limited to "the legality of [the petitioner's] detention" and "does

not extend to the merits of [his or her] anticipated removal." *Id.* (citing 8 U.S.C. § 1252(g); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); and *Bayo v. Napolitano*, 593 F.3d 495, 500 (7th Cir. 2010)). "[I]ndirect challenges of a final removal order" are outside the district court's § 2241 purview. *Ferreyra v. Nielsen*, No. 18-CV-1005, 2018 WL 4496330, at *2 (E.D. Wis. Sept. 18, 2018) (citing *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); and *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)); *see also Vargas v. Beth*, 378 F. Supp. 3d 716, 722 (E.D. Wis. 2019) (noting that district court does not have jurisdiction over "repackaged challenges to removal").

Despite repeatedly arguing in the petition that his waiver of a removal hearing when he entered the United States under the VWP was not valid, Petitioner casts Count One as a challenge to unlawful detention. ECF No. 1 at 3, 5. His detention is unlawful, he argues, because "Respondents have failed to produce any executed [VWP] waiver, any administrative removal order issued pursuant to [INA §] 217, or any administrative record establishing that a valid waiver exists," without which Respondents may not keep Petitioner detained or "deny Petitioner an individualized custody determination." *Id.* at 5. The Court understands Petitioner to be arguing in Count One that his detention was unlawful not because his VWP waiver was invalid, but because Federal Respondents' documentation of his VWP waiver was lacking at the time he filed the petition. *See id.* at 4 ("Based solely on their asserted reliance on [INA § 217] . . . , and without producing any document authorizing such detention, Respondents have categorically denied Petitioner any bond hearing or individualized custody determination.").

In response to the petition, Federal Respondents submitted DHS records addressing Petitioner's entry into the United States, apparently under the VWP. ECF No. 5-1. Federal Respondents also argued in their response to the petition that the I-94W form attached to the petition, and/or the circumstances under which Petitioner entered the United States, adequately demonstrate that Petitioner validly waived his right to contest removal. *See* ECF No. 4 at 4–5. Petitioner does not raise any further argument in his opposition to the motion to dismiss that his VWP waiver was invalid. *See generally* ECF No. 9.

Federal Respondents' submission appears to have satisfied Petitioner's demand that "Respondents . . . produce the waiver and administrative record they claim authorize [his] detention, so that the legality of the asserted custody authority may be meaningfully reviewed." ECF No. 1 at 6; *id.* at 8 (asking the Court to "[i]ssue a writ of habeas corpus directing Respondents to file a return producing the executed VWP waiver, the alleged § 217 administrative removal order, and the administrative record relied upon").

Petitioner makes no argument that Federal Respondents' submission was inadequate. Rather, his brief seems to focus solely on whether Petitioner is lawfully detained under 8 U.S.C. § 1231's mandatory detention provision. ECF No. 9 at 5–6; *see infra* Section 3.2. The Court will nonetheless address Petitioner's VWP-related claim, Count One, for the sake of complete analysis.

Even understanding Petitioner as arguing in Count One that the lack of VWP-related documentation made his detention unlawful, the count is either moot or the Court does not have jurisdiction to hear it. As explained above, such documentation has now been provided, thus enabling "the

legality of the asserted custody authority [to] be meaningfully reviewed." *Id.* at 6. In light of this development, plus the existence of the January 1, 2026 Final Administrative Removal Order, the crux of Count One now boils down to whether Petitioner validly waived his right to contest removal back in 2001 and is properly subject to summary removal without a hearing. This question is undeniably outside of the Court's purview. *Ferreyra*, 962 F.3d at 333 n.2; *Neilova*, 812 F. Supp. 3d at 839 ("Neilova's argument challenging the validity of her removal order falls outside this Court's jurisdiction." (collecting cases)).

To the extent Petitioner seeks "immediate release[] or . . . a prompt individualized custody determination by a neutral decisionmaker" as relief for the violation asserted in Count One, ECF No. 1 at 8, such relief would also require the Court to wade into questions that are exclusively reserved for the Seventh Circuit. The Court cannot, as Petitioner suggests, *id*. at 6, review "the legality of the asserted . . . authority" of Petitioner's detention pending removal because that asserted authority is Petitioner having overstayed his VWP visa and supposedly having waived his right to contest removal. Even couched as an unlawful detention claim, Count One is an "indirect challenge[] of a final removal order." *Ferreyra*, 2018 WL 4496330, at *2 (citations omitted). The Court could not order release or a custody hearing based on the violation alleged in Count One without finding that Petitioner has plausibly alleged that his VWP waiver was invalid. Again, only the Seventh Circuit can reach these merits questions.

For these reasons, Count One is subject to dismissal for lack of jurisdiction.

### 3.2 Counts Two and Three

As earlier noted, Federal Respondents argue that these counts fail to state a viable claim for relief and accordingly are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). However, the Court finds that these counts are also outside of its jurisdiction. Federal Respondents' motion to dismiss will be granted as to these two counts, albeit for a different reason than Federal Respondents provide. The same legal standard for dismissal for lack of jurisdiction stated *supra* Section 3.1 applies here.

Federal Respondents characterize Count Two as challenging the statutory authorization for Petitioner's ongoing detention and Count Three as raising a constitutional due process challenge to his ongoing detention. ECF No. 8 at 5–6. They do not challenge whether Counts Two and Three are within the Court's jurisdiction and/or properly raised under § 2241. *Id.* at 5.

Rather, with respect to Count Two, Federal Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231 and that their "documentary evidence . . . has directly rebutted the claims . . . by revealing the clear existence of valid statutory authority for Petitioner's detention," precluding any relief. *Id.* With respect to Count Three, Federal Respondents argue that such a claim is premature, as Federal Respondents are entitled to detain Petitioner for up to 90 days while his removal is pending, and for six months or more consistent with due process, neither of which time period had expired at the time Federal Respondents filed their motion to dismiss. *Id.* at 6 (citing 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ." 8

U.S.C. § 1231(a)(1)(A). This ninety-day removal period begins, as relevant to this case, when "the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A); *see also Johnson v. Guzman-Chavez*, 594 U.S. 523, 528 (2021) ("During the removal period, detention is mandatory." (citing § 1231(a)(2)(A)).

Although Petitioner originally pleaded that he was detained without any specific statutory authority, ECF No. 1 at 6, in his opposition brief he does not contest that his detention is ostensibly pursuant to § 1231 and a final order of removal. What he does contest is "whether a valid removal order exists" as a predicate to justify mandatory detention under § 1231. ECF No. 9 at 6.

Petitioner uses the term "validity" throughout his brief. *See generally id.* at 5–11. He does not cite to any authority explaining what constitutes an "administratively final" removal order within the meaning of § 1231 nor does he appear to challenge that the Final Administrative Removal Order issued against him fits that definition. The Court, therefore, understands Petitioner as "argu[ing] against the *validity* of the order of removal" rather than "the *finality* of [his] removal order." *Neilova*, 812 F. Supp. 3d at 839 (emphasis added). He points to a several procedural defects in the issuance of the January 1, 2026 Final Administrative Removal Order as demonstrating that no valid removal order exists and, therefore, that his mandatory detention under § 1231 is impermissible. ECF No. 9 at 6–10.

Specifically, he notes that the Final Administrative Removal Order was signed the same day as the Notice of Intent to Issue a Final Administrative Removal Order issued and before Petitioner's forty-eight hour period to contest the removal order expired, thereby depriving him "a

meaningful opportunity to be heard." *Id.* at 6–7 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)); *see supra* Section 2 and ECF No. 5-3 at 1. He also notes that the removal paperwork was explained to him in English but he "is a native Spanish speaker from Uruguay"[6] as a procedural flaw. ECF No. 9 at 9–10; *see supra* Section 2 and ECF Nos. 5-3 and 5-5.

He further notes two discrepancies in the removal paperwork. First, he points out that he was apparently charged in the Notice of Intent to Issue a Final Administrative Removal Order under a different section of the INA (§ 237) than the section under which he was processed (§ 217), which matters because § 237 does not apply to VWP entrants and § 237 proceedings "trigger[] formal removal proceedings before an immigration judge." ECF No. 9 at 9 (citing 8 U.S.C. § 1227(a)(1)(B)); ECF No. 5-3 at 1; *see also* 8 U.S.C. §§ 1229a(a)(1)–(2) ("An immigration judge shall conduct proceedings for deciding the . . . deportability of an alien," including those "charged with . . . any applicable ground of deportability under section 1227(a) of this title."). He also points out that he was arrested without a warrant, but the removal paperwork refers to "a Warrant of Arrest, Form I-200, signed at time of arrest," ECF No. 9 at 8 (quoting ECF No. 5-2 at 2). Finally, he notes discrepancies between Gavin's declaration and the exhibits attached thereto as at least precluding a finding that dismissal is appropriate. *See id.* at 7–8 (quoting ECF No. 8 at 5). Federal Respondents filed no reply brief addressing these arguments.

---

[6]Petitioner made no allegations in the petition regarding his ability to understand English, nor did he address his English abilities after having lived in the United States for over two decades.

Petitioner's framing of Count Two in his opposition brief places this claim outside of the Court's jurisdiction. As the district court in *Ferreyra v. Nielsen* explained:

> In 2005 Congress passed the REAL ID Act, Pub. L. No. 103-13, 119 Stat. 231, which took § 2241 habeas jurisdiction over orders of removal away from federal district courts and gave it exclusively to the federal courts of appeals. As codified at 8 U.S.C. § 1252, "a petition for review filed with an appropriate court of appeals . . . *shall be the sole and exclusive means for judicial review of an order of removal entered or issued*[.]" 8 U.S.C. § 1252(a)(5) (emphasis added); *see also Padilla . . .*, 470 F.3d at 1214 . . . (finding that "Congress clearly intended the courts of appeals to be the one judicial forum for hearing challenges to administrative removal orders").
>
> While the REAL ID Act has divested federal district courts of jurisdiction over final removal orders, the legislative history of the Act indicates that it was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *Hernandez v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) (quoting H.R. REP. NO. 109-72, at 2873 (May 3, 2005)); *see Kellici v. Gonzales*, 472 F.3d 416, 419 (6th Cir. 2006) ("Where a habeas case does not address the final order, it is not covered by the plain language of the [REAL ID] Act."). But courts have held that the jurisdiction-stripping provisions of the Act apply to indirect challenges of a final removal order. [S]*ee Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018); *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)." (quotation omitted)); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding that if petitioner is indirectly challenging her reinstated order of removal, "section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge").

*Ferreyra v. Nielsen*, 2018 WL 4496330, at *2. "[A] petitioner may not circumvent [§ 1252,] the jurisdiction-stripping statute[,] by couching his challenge to removal as a challenge to detention." *Vargas*, 378 F. Supp. 3d at 721–22 (collecting cases).

Petitioner's challenge to the validity of the Final Administrative Removal Order via Count Two is not properly before this Court. "When a claim by an alien, however it is framed, challenges the *procedure* and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Martinez*, 704 F.3d at 623 (emphasis added) (citing *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1082–83 (9th Cir. 2010) and *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010)).

That Petitioner frames Count Two as an unlawful detention claim does not save it, because his theory of unlawful detention (as developed in his opposition brief) is intertwined with and indeed squarely challenges the validity of his Final Administrative Removal Order. *See, e.g.*, *Adebayo v. Gonzales*, No 06 C 1026, 2006 WL 642628 (N.D. Ill. Mar. 7, 2006) (denying petition for lack of jurisdiction where petitioner "contend[ed] that the removal order would not have been entered against him but for the incompetence of the attorney who represented him in the immigration proceedings"). Petitioner is not "challeng[ing] the existence of his removal order, but alleges errors 'on which the validity of the final order [are] contingent,' and the relief he seeks would clearly be inconsistent with the order of removal. *Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 206 (3d Cir. 2013) (quoting *Immigr. & Naturalization Servs. v. Chadha*, 462 U.S. 919, 938 (1983), *abrogated on other grounds by Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499 (3d Cir. 2024). Count Two is therefore not among those claims that are

"independent of challenges to removal orders" that the Court is permitted to entertain in a § 2241 petition. *Hernandez*, 424 F.3d at 42–43 (citation omitted).

Petitioner's due process challenge to the length of his detention, Count Three, is also not properly before the Court. Count Three argues that Petitioner's detention is "prolonged . . . without meaningful process." ECF No. 1 at 8. He concedes that "the six-month presumptive period identified in *Zadvydas*[, 533 U.S. 678] has not yet elapsed" but could "ripen as detention continues." ECF No. 9 at 10. To the extent Count Three raises a due process challenge, it is premature. *See Zadvydas*, 533 U.S. at 701 ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

The Court notes that, as of the writing of this Order, Petitioner may be entitled to a hearing to determine whether release is appropriate under 8 U.S.C. § 1231(a)(6). "If an alien is not removed within 90[ ]days, he may be detained only if DHS determines that he is 'a risk to the community or unlikely to comply with the order of removal.'" *Fuentes-Santos v. Schmidt*, No. 25-CV-1359, 2025 WL 3101397, at *1 (E.D. Wis. Nov. 6, 2025) (citing 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4; and *Johnson*, 594 U.S. at 529). Petitioner's demand for a custody hearing (as an alternative remedy to immediate release), ECF No. 1 at 8, seems to have been aimed initially at determining the statutory basis for his detention. Now that Federal Respondents have invoked § 1231 as the statutory basis for Petitioner's detention, and now

that he has been detained for more than ninety days,[7] his demand for a custody hearing would now address whether he is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

However, that is not the claim that Petitioner has raised; Count Three speaks only in terms of due process, rather than Petitioner's statutory entitlement to a custody hearing. ECF No. 1 at 7–8. The Court declines to rewrite Count Three for Petitioner, who is represented by counsel and who could have amended his petition at any time to assert such a claim.

For these reasons, Count Three is subject to dismissal without prejudice. If Petitioner has not received a custody hearing pursuant to 8 U.S.C. § 1231(a)(6) by the time this Order issues and/or if he remains detained after six months from the issuance of his Final Administrative Removal Order, he may refile this claim in a new petition.

Because the Court resolves the motion to dismiss on other grounds, it will not address Petitioner's additional argument that allowing removal to go forward "would be premature and unjust in light of [Petitioner's] imminent eligibility for adjustment of status" through his eldest daughter. ECF No. 9 at 13–14.

### 3.3    Transfer

Petitioner requests that, if the Court finds that it lacks jurisdiction over the petition, the petition be transferred to the Seventh Circuit. ECF No. 9 at 10–11. Federal Respondents argue that transfer would not be

---

[7]Calculating the period from December 30, 2025, when Officer Nimtz signed the Final Administrative Removal Order applicable to Petitioner, the ninety-day removal period elapsed on March 30, 2026; calculating the period from January 1, 2026, when that order was served on Petitioner, the removal period elapsed on April 1, 2026. 8 U.S.C. § 1231(a)(1)(B)(i).

appropriate because the petition would have been time barred even if filed initially with the Seventh Circuit. ECF No. 8 at 7.

When a district court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. "[A] petition to review an order of removal 'must be filed no later than 30 days after the date of the final order of removal.'" *Ferreyra*, 2018 WL 4496330, at *3 (citing 8 U.S.C. § 1252(b)(1)).

As discussed above, it is not clear exactly when Petitioner's removal order became final. But Petitioner essentially concedes that any appeal of his removal order would have been untimely. *See* ECF No. 9 at 10–11. Assuming, as Petitioner does, that his removal order became final on January 1, 2026, his thirty-day appeal deadline was Saturday, January 31, 2026. *Id.* at 11; 8 U.S.C. § 1252(b)(1). By operation of Federal Rule of Appellate Procedure 26(a)(1)(C), the appeal deadline presumably was extended to Monday, February 2, 2026. He filed the petition with this Court on February 3, 2026, one day late. ECF No. 1.

Recognizing that the petition was filed late, Petitioner argues that equitable tolling "may apply." ECF No. 9 at 11. He provides two sentences of analysis and does not cite to any equitable tolling standard. *Id.* Beyond being severely underdeveloped, this argument is not properly before the Court. Since the Seventh Circuit has jurisdiction over Petitioner's claims, it also must be the court to decide whether to equitably toll Petitioner's appeal deadline. At this time, the Court concludes only that transfer of the petition is inappropriate.

**4.     CONCLUSION**

For the reasons stated herein, Federal Respondents' motion to dismiss will be granted in full, the petition will be denied without prejudice, and this case will be dismissed.

Rule 11 of the Rules Governing Section 2254 Cases—which this Court may apply to § 2241 cases, *see* Rule 1(b), Rules Governing Section 2254 Case—requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, as explained in depth above, the claims that Petitioner raises are either undeniably outside the Court's jurisdiction or premature. The Court does not find any grounds to believe that reasonable jurists would debate this outcome or find reason to encourage Petitioner to proceed further before this Court at this time. Accordingly, the Court declines to issue him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Respondents Samuel Olson, Markwayne Mullin, and Todd Blanche's motion to dismiss, ECF No. 7, be and the same is hereby **GRANTED** as stated herein;

**IT IS FURTHER ORDERED** that Petitioner Alvaro Javier Sosa Altez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Alvaro Javier Sosa Altez's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of May, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge